AO 106 (Rev. 04/10) Application for a Search Warrant

AUSA

# UNITED STATES DISTRICT COURT

for the

Southern District of Ohio

| In the Matter of the Search of | |
|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* ) | Case No.    2:21-mj-652 |
| SNAPCHAT ACCOUNT CRIPFACELOC85, UTILIZED BY DESHAWN LEWIS, WITH SERVICES PROVIDED BY SNAP INC. ) ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A to the Affidavit in Support of the Application, incorporated herein by reference.

located in the _____ Southern _____ District of _____ Ohio _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B to the Affidavit in Support of the Application, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1956 (a)(1)(A)(i) | Laundering of monetary instruments |
| 21 U.S.C. § 841(a)(1) | possession with intent to distribute a controlled substance |
| 18 U.S.C. § 1956 (a)(1)(B)(i) | Laundering of monetary instruments with the intent to conceal or disguise the nature |

The application is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

☑ Delayed notice of _____ days (give exact ending date if more than 30 days: until 12/1/21 ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Samuel Chappell ATF TFO
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 10/8/2021

City and state: Columbus, Ohio

_____
Chelsey M. Vascura *Judge's signature*
United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR SOUTHERN DISTRICT OF OHIO EASTERN DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF THE APPLICATION | ) | |
| OF THE UNITED STATES OF AMERICA | ) | |
| FOR AN ORDER RELATING TO | ) | No.  2:21-mj-652 |
| SNAPCHAT ACCOUNT "CRIPFACELOC85" | ) | |
| (SUBJECT ACCOUNT) | ) | **FILED UNDER SEAL** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Samuel Chappell, Alcohol Tobacco and Firearms (ATF) Task Force Officer (TFO), being sworn, depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I am an "investigative or law enforcement officer of the United States" within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Section 2516, Title 18, United States Code.

2.      I am a Columbus Ohio Police Office (Columbus Police Department) currently assigned as a Task Force Officer (TFO) with the bureau of Alcohol Tobacco and Firearms (ATF). The Columbus Division of Police has employed me since 2007.  My responsibilities as a Task Force Officer include the investigation of violent criminal street gangs, narcotics traffickers, money launders, and firearm

9

related crimes. I have participated in the execution of search warrants and arrests related to the above-referenced offenses. By virtue of my experience and training, I am familiar with cellular telephone search warrants. Throughout this affidavit, reference to "investigators" specifically refers to criminal investigators

3.    Based on my training and experience, I am familiar with the manner and means commonly employed by drug traffickers, including those employed to avoid detection by law enforcement. I am also familiar with the terminology and slang commonly employed by drug traffickers. In my training and experience, I have observed and examined cocaine, cocaine base ("crack"), heroin, marijuana, methamphetamine, oxycodone, heroin, fentanyl, and other controlled substances that are, by themselves, illegal to possess. I am aware of the prices commonly charged on the street for these substances, the method of packaging, and the jargon used in their trade. During my law enforcement career, I have received specialized training regarding the activities of narcotics traffickers, including the methods used to package, store, and distribute narcotics, and the methods used by narcotics traffickers to conceal and launder the proceeds of their narcotics trafficking activities.

4.    I have participated in various aspects of drug-related investigations. I have participated in controlled purchases of controlled substances utilizing confidential sources and undercover law enforcement agents and officers. I have prepared affidavits submitted in federal court in support of applications for criminal complaints, search warrants, tracking warrants, and/or arrest warrants. I have participated in numerous investigations involving a variety of investigative techniques, including physical and electronic surveillance methods; controlled purchases; the analysis of a wide variety of records and data, including pen register

10

and trap and trace data as well as cell phone location data; and the debriefing of defendants, informants, and witnesses, as well as others who have knowledge of the distribution, transportation, storage, and importation of controlled substances.

19.     Through investigations, my training and experience, and conversations with other law enforcement officers, I have become familiar with the methods used by narcotics traffickers to distribute, transport, store, import, and safeguard controlled substances. I know that narcotics trafficking organizations have developed a number of methods to insulate their illegal activities from law enforcement detection. For instance, I know that members of narcotics trafficking organizations routinely utilize electronic communications facilities, including cellular telephones and mobile messaging applications such as Snapchat, to communicate operational directives and information concerning the conduct of the organization's illegal activities to other organization members; that organization members routinely use coded references in an effort to avoid law enforcement detection; and that the communication of time-sensitive information is critical to the successful conduct of these organizations' illegal activities. I am also familiar with narcotics traffickers' use of prepaid cellular and cellular phones, normal land line phones, public phones, debit calling cards, counter-surveillance, and the use of false and/or fictitious identities. Finally, I am familiar with the coded language used by narcotics traffickers during conversations in an attempt to disguise the true meaning of their conversations.

## BASIS AND PURPOSE OF AFFIDAVIT

20.     I am an investigator on an investigation involving the Deshawn LEWIS drug trafficking organization (DTO). As a result of my personal participation in this investigation

11

and my conversations with other law enforcement officers involved in this investigation, I am familiar with all aspects of this investigation including, but not limited to, the following: (1) reports made by other law enforcement officers; (2) telephone subscriber records, and telephone toll records; (3) information provided by cooperating sources; (4) information gained from prior executed search warrants and (5) information obtained via grand jury subpoena. The information in this Affidavit is based on interviews of witnesses, review of intercepted communications, my own observations and actions, information received from other law enforcement agents, my experience and training, and the experience of other agents.

21.     This Affidavit is submitted for the limited purposes of: (1) establishing that there are specific and articulable facts showing that there are reasonable grounds to believe that the information sought in the attached Application pursuant to 18 United States Code section 2703 is relevant and material to an ongoing criminal investigation; and (2) establishing probable cause to believe that a criminal offense has been committed and that the location information sought in the attached Application (specifically, information relating to the location of the devices accessing the Subject Account described immediately below) will lead to relevant and material information in the investigation of allegations that LEWIS and others, are engaged in drug trafficking.

22.     Because of the limited purpose of this Affidavit, I have not included all of the facts known to me or other law enforcement officers about the investigation.

### The Subject Account

23.     The Snapchat account that is the subject of the attached application is:

12

a.  the Snapchat account "CRIPFACELOC85" believed to be used by DESHAWN LEWIS, that is controlled and serviced by Snap, Inc. at 63 Market Street, Venice, California 90291 (hereinafter, the "Subject Account");

24.  There is evidence that information concerning the ongoing use of the Subject Account and the location of the devices accessing the Subject Account will provide evidence of a criminal offense, namely conspiracy to possess with intent to distribute narcotics, in violation of Title 21, United States Code, Sections 846 and 841(a) (the Subject Offenses).

## BACKGROUND ON SNAPCHAT

25.  Based on my training and experience, and on information provided by Snapchat, Snapchat is one of the most popular applications for sending and receiving "self-destructing" messages, pictures, and videos. Snapchat is a messaging application for mobile phones with Apple's iOS operating system and Google's Android operating system. Snapchat offers four primary ways for users to communicate with each other.

26.  **Snaps.** A user takes a photo or video using their camera phone in real-time. The user then selects a time limit of 1-10 seconds for the receiver to view the photo or video. A user can elect to have the photo/video saved in their phone's photo gallery or just sent via Snapchat, without being saved. The photo/video can then be sent to a friend in Snapchat. The snap is deleted after the selected amount of time. If a recipient attempts to take a screenshot of the snap to save on his/her phone, the application will notify the sender of this behavior.

13

27. Snapchat states that it deletes each snap from its servers once all recipients have viewed it. If a snap has not been viewed by all recipients, Snapchat states that it retains the snap for thirty days.

28. **Memories**. Memories is Snapchat's cloud-storage service. Users can save their sent or unsent Snaps, posted Stories, and photos and videos from their phone's photo gallery in Memories. A user can also edit and send Snaps and create Stories from these Memories. Snaps, Stories, and other photos and videos saved in Memories are backed up by Snapchat and may remain in Memories until deleted by the user.

29. **Stories.** A user can also add the photo/video Snap to their "Story." Depending on the user's privacy settings, the photos and videos added to a Story can be viewed by either all Snapchatters or just the user's friends for up to 24 hours. Stories can also be saved in Memories.

30. **Chat.** A user can also type messages to friends within the Snapchat app using the Chat feature. A user sends a Chat message to a friend, and once it is viewed by both parties – and both parties swipe away from the Chat screen – the message will be cleared. Within the Snapchat app itself, a user can opt to save part of the Chat by tapping on the message (text or photo) that he or she wants to keep. The user can clear the message by tapping it again. The Chat function also allows users to make live voice calls, which are similar to phone calls but occur through the Snapchat application, and live video calls.

31. Snapchat also obtains a variety of non-content information from its users.

32. **Usage Information**. Snapchat may collect information about how users interact with its services, including which search queries they submit, and how they

14

communicate with other users, including maintaining a log of all snaps to and from an account for the last 31 days, for 24 hours of posted Stories, and for any unopened Chats or those saved by a sender or recipient, and how a user interacts with these messages (such as when a user opens a message).

33. **Device Information**. Snapchat collects information about the devices of its users, including information about the user's hardware and software, such as the hardware model, operating system version, device memory, advertising identifiers, unique application identifiers, apps installed, unique device identifiers, browser type, language, battery level, and time zone; information from device sensors, such as accelerometers, gyroscopes, compasses, microphones, and whether the user has headphones connected; and information about the user's wireless and mobile network connections, such as mobile phone number, service provider, and signal strength.

34. **Device Phonebook**. Snapchat may collect information about the phonebook of the user's device.

35. **Cameras and Photos**. Snapchat may collect images and other information from the user's device's camera and photos.

36. **Location Information**. Snapchat may collect information about the user's location, including precise location using methods that include GPS, wireless networks, cell towers, Wi-Fi access points, and other device sensors, such as gyroscopes, accelerometers, and compasses.

37.    **Snap Map**.  Snapchat allows a user to share location information with his/her friends and also obtain location information about the user's friends.   Based on such information, Snapchat places the friends' locations on a map viewable to the user.

38.    **Information Collected by Cookies and Other Technologies**.  Snapchat may collect information through cookies and other technologies about the user's activity, browser, and device.

39.    **Log Information**.   Snapchat collects log information when a user uses Snapchat's website, including device information, access times, pages viewed, IP address, and pages visited.

## PROBABLE CAUSE

40.    This affidavit is submitted for the limited purpose of establishing probable cause and therefore contains only a summary of the relevant facts. I have not included each and every fact that I, or others, have learned during the course of this investigation.   The information set forth in this affidavit is based on my own participation in the investigation, information I have received from other law enforcement officials and from my other agents' analysis of documents and records relating to this investigation. As one of the case agents on this investigation, I am familiar with the investigative efforts of other agents/Columbus Police Detectives who have worked on this investigation.  Further, I am familiar with the evidence gathered through the issuance of search warrants, subpoenas, and information provided to myself and other agents by cooperating individuals.

16

41.     The United States, including the bureau of Alcohol Tobacco and Firearms (ATF) and the Columbus Division of Police (CPD) is conducting a criminal investigation of Deshawn LEWIS AKA "Crippy" and "Cripface" for violations 18 United States Code, Section, 1956 (a)(1)(A)(i) (Laundering of monetary instruments with the intent to promote the carrying on of the specified unlawful activity) 18 United States Code, Section, 1956 (a)(1)(B)(i) (Laundering of monetary instruments with the intent to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of the specified unlawful activity) and Title 21 United States Code, Section, 841(a)(1) (possession with intent to distribute a controlled substance) .

40.     As more fully established below, probable cause exists to believe that Deshawn LEWIS operates a Drug Trafficking Organization (DTO) which spans several states including Ohio and Texas. LEWIS operates his DTO with Mario "Big Rio" Sydnor Sr., James Haley, Mario "Lil Rio" Sydnor Jr., Michael Onyejekwe, Nashiba N. Radcliff, and others known and unknown to investigators. The investigation has shown that the LEWIS DTO traffics in fentanyl, methamphetamine, cocaine, and marijuana. Members of the DTO use the identities of drug users to rent homes and ship packages. The rental homes are used as locations from which to traffic narcotics. LEWIS and members of his DTO likely launder their drug proceeds through at least one bank account.

17

41.     However, due to the DTO operating in several states law enforcement does not know exactly where and how LEWIS sells his drugs, the location(s) where LEWIS stores his drugs, the identities of all of LEWIS's customers, or whether he launders drug proceeds through any other financial institutions. Therefore, there is probable cause to believe that knowing LEWIS's location and being able to possibly discover patterns of movement for LEWIS, will assist law enforcement in determining these unknown pieces of information.

42.     Through my training and experience, I am aware that it is common for narcotics traffickers to use cell phones, often as a vital part of their business. Narcotics traffickers frequently use cell phones to communicate with customers and suppliers via SMS or text message, voice calls, video calls, and social media. Narcotics traffickers often use cell phones to take photographs or videos of themselves, their associates, their property, and their products, including illegal narcotics. Since the narcotics trade relies so heavily on communication narcotics traffickers are rarely without their cellphone.

## CRIMINAL HISTORY

43.     LEWIS has felony arrests for narcotics and firearm possession. He has at least one felony conviction that could result in a sentence of more than one year in prison.

   a. Franklin County Court of Common Pleas Case 04CR003007 for felony possession of drugs

18

b. Franklin County Court of Common Pleas Case 05CR000787 for carrying a concealed weapon.

c. Franklin County Court of Common Pleas Case 09CR001870 for carrying a concealed weapon.

d. Franklin County Court of Common Pleas Case 09CR003072 for felonious assault.

e. Franklin County Court of Common Pleas Case 09CR003587 for carrying a concealed weapon.

44.     LEWIS as his street name suggests is an associate and or member of the Crips criminal street gang. LEWIS is often observed with members and or associates of the Short North Posse (SNP) criminal street gang.

## NARCOTICS TRAFFICKING

45.     On or about June 22, 2021, investigators interviewed a confidential source (hereafter referred to as CS1) about drug activity related to the west side of Columbus, Ohio. While speaking with CS1, officers obtained information about a drug house CS1 regularly purchases narcotics from.  CS1 stated the drug house is located close to the corner of South Central Ave and Union Avenue.  CS1 stated the house is one house south of the corner house and that everyone enters through the rear alley.  CS1 stated you have to open a wooden gate and walk through the back yard, then go into the back door of the residence.  CS1 further stated that there is a white guy who usually serves the drugs to the customers, but that they are not his drugs.  CS1 stated the house is run by a black male who goes by the name of

19

"Crippy" or "Cripface". CS1 stated you will never catch him there though because he is the boss. CS1 stated there is usually a group of black males who are armed that operate the house for him.

46.     Officers provided CS1 with a map to verify the exact location, which was verified as 430 South Central Avenue Columbus, OH 43223. CS1 stated that you can buy any type of drug from this house and that it is the busiest house in the area as far as drug related activity.

47.     After interviewing CS1, investigators began conducting surveillance of 430 South Central Avenue Columbus, OH 43223. Investigators were able to corroborate the information provided by CS1, along with additional evidence obtained through surveillance. LEWIS also was observed and photographed by investigators on June 30th, 2021, at 430 South Central Avenue Columbus, OH 43223. LEWIS was observed opening the rear door of the residence for multiple individuals coming and going from the residence who were suspected of buying narcotics, corroborating information provided by the confidential informants.

48.     On July 1, 2021, a search warrant of 430 South Central Avenue resulted in the seizure of approximately 30 grams of crack cocaine, 19 grams of fentanyl, 1 handgun, $929 dollars in cash, and multiple items of drug paraphernalia. During the execution of the search warrant by Columbus Narcotics INTAC team, Mario Sydnor Jr. was found in the upstairs bathroom of the residence. Mario Sydnor Jr. was observed by tactical officers attempting to dispose of the

20

recovered handgun, which he ultimately threw out the upstairs bathroom window onto the roof of the residence. Additionally, Mario Sydnor Jr's cell phone was recovered at the base of the bathroom toilet and the recovered narcotics were found floating in the bowl of the toilet. Almost the entirety of cash seized from the search warrant was located on the bathroom floor next to the toilet. Based on this evidence and observations made by the Narcotics tactical team, Mario Sydnor Jr. was placed under arrest.

49. At the time of entry by Columbus INTAC Mario Sydnor Jr. was the only individual in the upstairs of the residence at the time. Nine additional individuals were detained by Columbus INTAC during the execution of the search warrant. All of the individuals were located in the basement of the residence, seven of the nine being local known street level prostitutes. These nine individuals were interviewed by investigators.

50. During the interviews, several of the individuals referenced the name "Crippy" or "Cripface." Through law enforcement databases and social media investigators were able to identify Crippy/ Cripface as Deshawn LEWIS with a DOB: 4/12/1985 and SSN: 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. Additionally, investigators learned that LEWIS to has an email ripmeefoo@gmail.com and a ICloud account of cripface4454@icloud.com. Investigators identified the Instagram account of 1_helluvanigga@instagram.com , the Facebook account of "Cutboy Crippy" as belonging to LEWIS.

21

- The following are summaries of pertinent information from statements made by the individuals (hereafter referred to as CS2-CS7) from inside of 430 South Central Avenue. CS 2 stated he/she regularly purchases fentanyl from 430 South Central Avenue and it is Deshawn LEWIS's dope house and that Deshawn LEWIS was just at the house the previous day.
- CS 2 was shown pictures taken by investigators during the time of surveillance on June 30th, 2021, at 430 South Central Avenue. CS 2 identified one of the males as Deshawn LEWIS and the other as "MJ," who is an associate/friend of Deshawn LEWIS and works for him at drug houses.
- CS 3 provided Deshawn LEWIS runs the drug house at 430 South Central Avenue.
- CS 3 provided Deshawn LEWIS is not just a "dope boy," he's the "plug." (A Plug refers to a narcotics trafficker who has a direct connection with a large/international narcotics supplier.)
- CS 4 provided 430 South Central Avenue belongs to Deshawn LEWIS.
- CS 4 provided Deshawn LEWIS was only in town for two days and that he put everyone in the house to work.
- CS 4 provided the people in the house sell fentanyl, crack cocaine, and possibly other narcotics.
- CS 4 provided Deshawn LEWIS makes $120,000 per week selling narcotics. CS 4 provided Deshawn LEWIS was at 430 South Central Avenue two days prior to the execution of the search warrant, and that he had everybody in the house counting over $100,000 using money counters.
- CS 4 provided that Deshawn LEWIS goes to Houston and that he is only in town until Friday (07-02-2021) of this week.
- CS 5 provided he/she came to 430 South Central Avenue to buy and use narcotics.
- CS 6 provided that he/she was at 430 South Central Avenue to use dope.
- CS 6 provided that 430 South Central Avenue is run by Deshawn LEWIS and that when he comes to re-up the house (resupply narcotics) or collect the cash he will lock everyone in the basement.
- CS 6 provided that Deshawn LEWIS was just at the house the previous day, but he is usually in Texas.
- CS 7 provided 430 South Central is Deshawn LEWIS's drug house.
- CS 7 provided that the male who was selling out of the house at the time of the search warrant is "Nef" or "Nephew" (Mario Sydnor Jr.).
- CS 7 was shown a picture of a male from surveillance pictures taken by investigators on surveillance as 430 South Central Avenue on June 30th, 2021. CS 7 identified the male as Deshawn LEWIS.

22

51. During the search of 430 South Central Avenue investigators located a paper notebook in the kitchen drawer. Investigators observed the handwritten letter which stated "Big Dogg Crippii run the show these bitch's anit shit and will always be nasty ass hoes so rememberthese words keep em in your head bitch boy when the boss talks you should close your mouth we anit got shit to ever talk about better keep your ass moven shit he's the reason your even doing what your doingso keep it pushing 2x". A second page from the notebook read:

- Ashley-paid 10
- Butters paid 10
- Crip

52. Based on training and experience it is believed the second page is a partial ledger used to track purchases or debts repaid to Crippy (Deshawn LEWIS).

53. On July 27th, 2021, investigators obtained State of Ohio search warrants for LEWIS's Facebook, Instagram, Google, and ICloud accounts.

54. A review of the ICloud account cripface4454@icloud.com provided multiple pieces of evidence allowing investigators to further understand LEWIS's DTO. Multiple videos and photos were observed on the ICloud where Deshawn LEWIS can be seen holding large sums of cash, weapons, and suspected drugs. Based on training and experience, the amount of suspected drugs observed were far greater than any amount that would be possessed by a

23

user and are indicative of a major drug trafficker. Many of the pictures and videos were geotagged to the location they were taken or received at. To follow is a list of the multiple pieces of evidence located within the ICloud and how investigators have been able to relate it to the investigation.

55. Within the ICloud return belonging to LEWIS a text message conversation between LEWIS and the contact name "Zap" who was determined to be LEWIS's sister, Nashiba N. Radcliff. The conversation which began on 10/4/2019 through 4/23/21 shows Nashiba Radcliff's involvement in LEWIS's DTO and her assistance with movement of cash, drugs, renting properties, paying for the rented properties, and offers insight into Deshawn LEWIS's operation.

56. Nashiba Radcliff chats with LEWIS on prices of prescription drugs methamphetamine and selling the drugs. Nashiba Radcliff and LEWIS have a conversation about a package which was supposed to be delivered to Nashiba Radcliff's residence at 875 Chittenden Avenue Columbus, OH 43201. The conversation details how the package was never delivered and they believed the mailman may have stolen the package. Nashiba Radcliff submitted a claim to have the package redelivered and LEWIS cautions her not to touch it and he will have a "geek" come over to get it. Investigators know the term "geek" to be used to describe narcotics users.

24

57. Based on training and experience your affiant knows drug dealers commonly receive narcotics through the mail system and will pay individuals to accept the packages, often times paying other individuals to retrieve the packages from the final destination.

58. LEWIS directs Nashiba Radcliff to collect and send cash on numerous occasions. LEWIS directs Nashiba Radcliff to get money and provides the address of 307 Taylor Avenue. LEWIS tells Nashiba Radcliff he has a person who is going to drive a truck belonging to Deshawn LEWIS to him. LEWIS asks Nashiba Radcliff if he can meet this person on "5th" and "give him the money." Nashiba responds with a series of videos showing her loading what appears to be a large amount of cash into a Bath and Body Works box and then wrapping the box with Christmas wrapping paper. LEWIS tells Nashiba Radcliff that "Rio" is trying to "drop that money" and then later confirms Nashiba Radcliff "got it." "Rio" has been identified as Mario Sydnor Sr.

59. Nashiba Radcliff also appears to utilize the banking system and cash sending applications such as Zelle. Nashiba Radcliff sent a video to Deshawn LEWIS of her in what appears to be a bank drive thru and the video shows a large amount of cash in the vehicle. Nashiba sends several screenshots of the Zelle app where she is sending money to "Deshawn Lemar." The screenshots show multiple transactions which total to $6,901 and $15,601.

25

60. James Haley has been identified by investigators and confidential sources as another member of LEWIS's DTO. Investigators have identified the phone number of 614-852-1538 as the phone number belonging to James Haley. Contained within the ICloud search warrant belonging to LEWIS are text messages between LEWIS and Haley. Below is a summary of the conversation between 9/26/2020 and 2/10/2021:

61. LEWIS sends James Haley messages where he instructs James Haley to take "Rio" (Mario Sydnor Sr.) his money or "bread." LEWIS also instructs James Haley to take "12 more yams of that food" to "Rio" (Mario Sydnor Sr.). The terms "yams" and "food" are common slang terms referring to narcotics. James Haley also sends n LEWIS several text messages where he gives LEWIS what appears to be drug counts and talking about where he picked up money and dropped off drugs.

62. Based on training and experience your Affiant believes the text messages between James Haley and LEWIS show LEWIS directing James Haley to deliver his money to Mario Sydnor Sr. and other directions of drug trafficking.

63. Contained within the ICloud account belonging to LEWIS were text messages between himself and Mario Sydnor Sr. (Big Rio). Mario Sydnor Sr. phone number is identified as 614-589-0551. The following is a summary of the text message conversation between Mario Sydnor Sr. and LEWIS between the dates of 8/29/20 to 4/19/21.

26

64. LEWIS and Mario Sydnor Sr. have numerous conversations regarding money. LEWIS instructs Mario Sydnor Sr. to facetime the number 614-971-0717 to pick up "bread". In LEWIS's Icloud account, the number belongs to the name "Staccs Shadudy," who has been identified as Micaiah Harris DOB 7/1/1997. The conversations between LEWIS and Micaiah Harris talk about "the count" and "Rio" getting the same "count." Your Affiant knows through training and experience, the term "the count" is often used a slang terminology referring to narcotics trafficking. LEWIS also sends a video to Mario Sydnor Sr. where LEWIS has several large stacks of money. The third stack of money, LEWIS says "thirty six hundred, two zips." Your Affiant knows from training and experience, the term "zip" is a slang term often used to describe an ounce of narcotics.

65. Several times throughout the text message thread Mario Sydnor Sr. commonly tells LEWIS to Facetime him and reminds LEWIS not to text. Your Affiant knows from training and experience drug dealers commonly will communicate through Facetime or phone calls to better conceal illegal activity.

66. In a video posted to YouTube on or about November 9, 2020, titled "Crippy Ball or Be Broke Official Video" Lewis is shown with large amounts US Currency, high-end vehicles. and what appears to investigators to be expensive jewelry. Several people appear in the video including Mario Sydnor Sr and Larry "Lil Larry" Smith. Smith is shown wearing his S.N.P necklace (Short

27

North Posse) SMITH is currently under indictment in the United States District Court for the Southern District of Ohio Case 2:21-CR-70 for firearm possession and possession with intent to distribute fentanyl. LEWIS graphically details how his DTO operates. Lewis raps:

- *"In a truck with a slut and she got a fake butt she break down a bale and put it in the mail and we put on the scale now we got that shit for sale. $3,000 for a pound maybe $20 for a gram."*

- *"Put a dummy on a plane get that shit to the O get the money counters out and facetime with Rio."* (At this point in the video Mario Sydnor Sr AKA Rio is shown with US Currency).

- *Point me to the stove and the scale you know im up put the soda in the blender im gonna cook it up."*

67.     In a video posted to YouTube on or about October 25, 2020 titled "Helluva Nigga Official Cutboy Crippy" LEWIS is shown with large stacks of US Currency and jewelry. Feactured is the video is a rapper with the name "Lil Top". Lil Top is shown weraring a necklace with "SNP". The video has the hastags #freediggs, #freefreezepop, #RIPbodybagboobs. Show during the video are Troy Locke, Thomas Coates, Dewyshawn Cox, and Mario Sydnor Sr. Thomas Coates and Troy Locke are currently under indictment in Franklin County Ohio Common Pleas case 21CR002968 for engaging in crrupt activity, and trafficking in drugs both are felonies of the first degree. Locke has previously been sentenced to 120 months of

28

imprisonment in United States District Court for the Southern District of Ohio Case 2:06CR265 conspiracy to distribute cocaine base. Thomas Coates has previously been sentenced to 84 months of imprisonment in United States District Court for the Southern District of Ohio Case 2:14CR127 for Racketeering in what is commonly referred to as the "Short North Posse Trial". The following are quotes by LEWIS from the video.

- *"Phone hittin getting richer off that dope in the picture"*
- *All blues been crippin I do cash and deliver."*
- *"White puffs I got it out of the blender"*
- *"With them Short North Niggas I just don't give a fuck."*
- *"Free ODog"*(Christopher "ODog" Harris is serving a life sentence from United States District Court for the Southern District of Ohio Case 2:14CR127 for racketeering, murder in the aid of racketeering, and several other convictions.
- *"Free Tysin"* Tysin L Gordin has previously been sentenced to 96 months of imprisonment in United States District Court for the Southern District of Ohio Case 2:14CR127 for racketeering.
- *"Free Freeze Pop"* (has previously been sentenced to 120 months of imprisonment in United States District Court for the Southern District of Ohio Case 2:14CR127 for racketeering

29

- *"Free Frog Nigga"* Deounte Ussury is serving a life sentence from United States District Court for the Southern District of Ohio Case 2:14CR127 for racketeering, murder in the aid of racketeering, and several other convictions.

68.     The following are photos or screenshots of videos relating to drug trafficking taken from the ICloud account of LEWIS. In several of the videos a voice can be heard narrating the video. Investigators believe it is LEWIS narrating the videos.



**b.**

Photo of suspected narcotics taken on or about December 14, 2019.

30



Screenshot from a video showing large amounts of suspected methamphetamine in several suitcases. Video was sent in a message to "Kev Bang" on or about July 5, 2020.

## TIES TO SNAPCHAT ACCOUNT CRIPFACELOC85

69.    LEWIS is known to have used the alias CRIPFACE on several occasions. LEWIS's year of birth is 1985.

70.    In messages recovered from LEWIS's ICloud account LEWIS sent several messages indicating that his SnapChat account username is CRIPFACELOC85.

## FINANCIAL ACTIVITY

71.    Records received from the Ohio Department of Taxation show that LEWIS has not filed personal income returns for 2017-220 nor has he filed any business taxes from 2017-2021

72.    The following are photos showing LEWIS with large amounts of United States currency and or jewelry.

31



Lewis with "money phone", jewelry, and necklace with CF taken on or about April 10, 2021.

LEWIS with US Currency taken on or about May 14, 2020.



32



Lewis with US Currency taken on or about February 28, 2020



Lewis with jewelry and necklace with CF.

33



Rolex watch from Johnny Dang & Co with $56,000 value.



Lewis with "Crippy" and CF necklace

34

## PLANNED INVESTIGATION

70.   ATF plans to use the information requested in the attached Application to (i) assist in establishing surveillance and patterns of activity concerning LEWIS and others; and (ii) help to identify methods of distribution and locations used to store the narcotics and proceeds from the sale of the narcotics.

72.   ATF further plans to use the information requested in the attached Application to identify and locate individuals who are in contact with the offender or offenders and may be able to provide information relevant to the investigation.

73.   As set forth above, there is reason to believe that the Subject Account is being used in connection with the criminal conduct that is under investigation, and that the information likely to be obtained from the use of a pen register and trap and trace device will be relevant to the ongoing investigation.

### Pen Register and Trap & Trace Certifications and Requests

74.   Applicant requests that this Court issue an order pursuant to Title 18, United States Code, Sections 3122-24 authorizing the installation and use of a pen register and trap and trace device for the Subject Account.

75.   Applicant certifies that: the information likely to be obtained from the pen register and the trap and trace devices on the Subject Account, maintained and serviced by Snap, Inc., an electronic messaging company, is relevant to an ongoing criminal investigation being conducted by the Alcohol Tobacco and Firearms Bureau regarding violations of the

Subject Offenses in that one or more individuals using the Subject Accounts or appear to be involved in the Subject Offenses.

76.　Applicant further states that the principal subject of the aspect of the investigation presently before the Court is LEWIS.

77.　Applicant requests that the Court issue an order authorizing the installation and use of a pen register to record and decode non-content dialing, routing, addressing, and signaling information (including IP addresses, MAC addresses, port numbers, packet headers, and packet size) for all electronic communications transmitted from or by the Subject Account and to record the date, time, and duration of such transmissions for a period of 30 days.[3] Applicant further requests that the Court issue an order authorizing the installation and use of a trap and trace device to capture the incoming electronic or other impulses, terminating at or routed to the Subject Account, which identify the originating number or other non-content dialing, routing, addressing, and signaling information for all protocols reasonably likely to identify the source of an electronic communication and the date, time and duration of such incoming impulses, for a period of 30 days.

78.　Applicant further requests that the order direct the government to use technology reasonably available to it that restricts the recording or decoding of electronic or

---

[3] The data packets transmitted over the Internet contain addressing information closely analogous to origination phone numbers captured by traditional trap and trace devices installed on telephone lines and destination phone numbers captured by traditional pen registers. Devices to determine the source and destinations of such communications can be implemented through a combination of hardware and software. The protocols for such communications relate to the type of communication being conducted (e.g., email, video transmission, instant-messaging).

36

other impulses to the dialing, routing, addressing, and signaling information utilized in the processing and transmitting of electronic communications so as not to include the contents of any electronic communications.

79.    Applicant further requests that the order direct the service provider to forthwith furnish the information, facilities, and technical assistance necessary to accomplish unobtrusively the installation and use of the pen register and trap and trace devices, by Snap, Inc. with a minimum of interference with the services accorded to the party with respect to whom the installation and use is to take place, and that reasonable compensation is to be paid by the government for reasonable expenses incurred in providing such information, facilities, and assistance pursuant to Title 18, United States Code, Section 3124(c).

Relevancy & Materiality of the Location of the<br>Devices Accessing the Subject Accounts

80.    Based on my training and experience, I believe that there is probable cause to believe that information regarding the location of the Subject Account namely, from Snapchat, all information, facilities, and technical assistance needed to ascertain the physical location of the devices accessing the devices accessing the Subject Account will constitute or lead to evidence of the Subject Offenses. The ability to obtain real-time information about the location of persons involved in criminal activity is valuable to investigators in several ways. Among other things, it provides evidence regarding the whereabouts of subjects of investigation at times when criminal conduct may be occurring; identifies locations where criminal activity may be occurring, thereby assisting law enforcement agents in establishing surveillance, identifying participants, and identifying locations and vehicles to be searched for

physical evidence; and assists in identifying patterns of activity and movement, as well as relationships among individuals involved in the criminal activity.

81. Information obtained from Snapchat's precision location information can be much more precise in getting investigators closer to the devices associated with the Subject Account and, thus, to the individual using the Subject Account.[4] (This process will not intercept the content of any wire communication.) When those location-based services are employed, Snapchat and law enforcement agents are able to more accurately determine the location of the actual Snapchat devices associated with the Subject Account than by using cell site information through the cellular provider (e.g., Verizon, AT&T, T-Mobile, Sprint, etc.) alone, which typically provides information only about the location of the cell tower and (ordinarily) the direction from which the signal is strongest. In addition, the use of Snapchat's access to its user's location information and similar technology does not require that law enforcement officers be located in physical proximity to the target telephone. Because of the investigative importance of obtaining information regarding the location of the devices accessing the Subject Account at specific times determined by investigators, rather than only at the beginnings and ends of telephone calls, this Application seeks authority for the use of location-based services at times determined by investigators.

---

[4] The information includes precise location information obtained location using methods that include GPS, wireless networks, cell towers, Wi-Fi access points, and other device sensors, such as gyroscopes, accelerometers, and compasses for the devices associated with the Subject Account.

Delayed Notification and Related Relief

82.     There is good cause to permit the seizure of location information relating to the devices accessing the Subject Account, at any time of the day or night, because of the need to locate the subjects of this investigation at all hours of the day or night.

83.     Providing immediate notification of the execution of any warrant requested in the attached application may have an adverse result as defined at Title 18, United States Code, Section 2705(a)(2), namely flight from prosecution, destruction of or tampering with evidence, and intimidation of potential witnesses, in LEWIS, or his co-conspirators were to learn about this application and the Court's orders, they could become suspicious of individuals with whom they worked to arrange their narcotics-distribution activities, which in turn could lead them to suspend their drug trafficking activity, become more secretive in how they do business, or flee. Moreover, as set forth above, there is reasonable necessity for the seizure of the Requested Location Information.

Respectfully submitted,

Samuel Chappell
Task Force Officer
ATF

Subscribed and sworn to before me on this 8th day of October 2021.

United States Magistrate Judge

40

## ATTACHMENT A

Snap, Inc. (SnapChat)

| Type of facility | Number, identifier, or account name | Subject of investigation | Subscriber, if known |
|---|---|---|---|
| SnapChat account | CRIPFACELOC85 | **Deshawn LEWIS** | |

SnapChat shall forward the information requested in the order from the above accounts to:

Snapchat1@covertop.us

Samuel.chappell@atf.gov

## ATTACHMENT B

### Particular Things to be Seized

### I.     Information to be Disclosed by the Provider

All information about the location of the Target Cell Phone described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of SNAP INC, SNAP INC is required to disclose the Location Information to the government. In addition, SNAP INC must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with SNAP INC's services, including by initiating a signal to determine the location of the Target Cell Phone on SNAP INC's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate SNAP INC for reasonable expenses incurred in furnishing such facilities or assistance.

All originating numbers or other dialing, routing, addressing, and signaling information for all protocols reasonably likely to identify the source of an electronic communication and the date, time and duration of such incoming impulses, so as not to include the contents of any wire or electronic communication.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.     Information to Be Seized by the Government

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. § 1956 (a)(1)(A)(i) (Laundering of monetary instruments with the intent to promote the carrying on of the specified unlawful activity) 18 U.S.C. § 1956 (a)(1)(B)(i)(Laundering of monetary instruments with the intent to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of the specified unlawful activity) and 21 U.S.C. § 841(a)(1) (possession with intent to distribute a controlled substance) involving **LEWIS.**

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by Snap, Inc. ("SnapChat"), and my title is _____. I am qualified to authenticate the records previously produced and listed in Attachment A, attached hereto, because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records previously produced and listed in Attachment A, attached hereto, are true duplicates of the original records in the custody of SnapChat. I further state that:

      a.     all records previously produced and listed in Attachment A, attached hereto, were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of SnapChat, and they were made by SnapChat as a regular practice; and

      b.     such records were generated by SnapChat's electronic process or system that produces an accurate result, to wit:

           1.     the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of SnapChat in a manner to ensure that they are true duplicates of the original records; and

2.      the process or system is regularly verified by SnapChat, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____        _____
Date                                    Signature